1997 ND 165

**Mari DEAN, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

**Civil No. 970052.**

Supreme Court of North Dakota.

Aug. 11, 1997.

Stephen D. Little (argued), Dietz, Little & Haas, Bismarck, for claimant and appellant.

Brent J. Edison (argued), Special Assistant Attorney General, Bismarck, for appellee.

MARING, Justice.

[¶ 1] Mari Dean appealed from a judgment affirming a Workers Compensation Bureau order dismissing her claim for benefits. The Bureau could reasonably have reached its factual conclusion that Dean intentionally made material false statements in connection with her claim, and we affirm.

[¶ 2] Dean was employed as a claims analyst by the Bureau. On June 28, 1994, Dean, while sitting in her chair at work, turned to put a stack of files on her desk. Dean felt "something lock[ ] in my back by my bra strap and I felt pain." Dean was unable to move and was taken to the hospital by ambulance. The emergency room physician told Dean she had a "severe muscle spasm." Dr. Erik Isaacson treated Dean for her injury on July 5, 1994. He found "[p]alpatory tenderness T3–T9," and diagnosed Dean with "Thoracic Sprain/Strain ... Thoracic Radiculitis."

[¶ 3] On July 13, 1994, Dean filed a claim for workers compensation benefits. The "Worker's Claim for Injury" form asked the applicant the "[e]xact part of your body injured," to which Dean wrote "Mid Back." The form also asked, "Have you had prior problems or injuries to that part of the body?" Dean checked the "No" box, but added "to Lower Back, only if I lift to[o] much my lower back will start to hurt. If needed I will go to a chiropractor for 1 visit. This only happens maybe once a year if that." Dean also wrote in an incident report she "felt a sharp pain in my mid-back .... My back still hurts and now my left shoulder blade hurts also."

[¶ 4] On July 15, 1994, both the Bureau's claims manager and the claims analyst assigned to Dean's file interviewed Dean about her injury and past medical problems. Dean reported her mid back, along her bra strap, was painful and, although she had previously been treated for neck and lower back problems, she had not had prior mid back thoracic problems.

[¶ 5] The claims analyst suggested the Bureau accept Dean's claim. But a supervisor recommended the Bureau obtain Dean's "past medical records to determine what, if any, back complaints or injuries she may have had that may affect her claim." The Bureau requested the names and addresses of all doctors Dean had seen in the last five years. On August 31, 1994, Dean provided the Bureau the requested information, listing a total of eight doctors or medical facilities she had visited in the last five years and describing the area of the body treated. Although Dean described several treatments to her low back or hip, she revealed no prior treatment to her mid back.

[¶ 6] The Bureau received Dean's medical records from two chiropractors, Dr. K. Todd Johnson and Dr. Dennis D. Sailer. Johnson's treatment notes indicated that on September 19, 1987, he treated Dean for "mid-thoracic pain." Sailer's records concerning Dean showed boxes checked next to "[p]lain across shoulders" under the category "[s]houlders," "[p]lain between shoulder blades" under the category "[m]id-back," and "[l]ow back pain" under the category "[l]ow [b]ack."

[¶ 7] The claims analyst and supervisor recommended dismissing Dean's claim for benefits because they believed she had made material false statements. A hearing officer approved the proposed dismissal after reviewing the claim. Dean submitted an affidavit dated September 29, 1994, stating "I have never presented for medical care for my mid-back prior to the June 28, 1994, injury" and "I can state with certainty that I was not experiencing any mid-back problems before the June 28, 1994, injury." On October 3, 1994, the Bureau dismissed Dean's claim, concluding Dean "made intentional, material false statements" in violation of N.D.C.C. § 65–05–33. Dean requested an administrative hearing.

[¶ 8] Dean relied on information from her treating physician and physiatrist, Dr. Carol Krause. Krause noted that Dean's persistent thoracic pain emanated from the "T10–11" area. The Bureau, however, had presented no evidence that Dean had previously complained of, or sought treatment for, an injury at the T10–11 levels prior to the work injury. Dean asserted her statements that

she had never had a mid back injury were therefore true.

[¶ 9] The hearing officer recommended the order dismissing Dean's claim be rescinded. The hearing officer reasoned "[t]he treatment information obtained from the chiropractors by the Bureau certainly raises some concerns regarding the accuracy of Ms. Dean's representations on her claim regarding her medical history, and warrants some kind of follow-up inquiry with each of the chiropractors, as well as with Ms. Dean, but that information is not, on its face, sufficiently reliable to support a factual conclusion that Ms. Dean has had a prior injury or problem to her mid-back.... The determination explained above is not tantamount to a finding that Ms. Dean did not have a prior injury or problem to her mid-back, only that this fact has not been sufficiently established on the record to support the ... dismissal of her claim."

[¶ 10] The Bureau then contacted Johnson for a clarification of his treatment notes and Dr. Scott C. Senne who had also treated Dean. Johnson responded that he treated Dean for "mid-thoracic problems" on eight occasions between September 19, 1987 and October 21, 1989, adding "[t]he specific levels treated were 6th and 7th thoracic." Senne said he had treated Dean on February 16, 1993, for her complaints of "neck, mid back, and low back pain" resulting from a fall on the ice. Senne said he treated Dean's "pelvis, her second lumnar, first and fourth thoracic, seventh, fifth, and second cervical, her occiput and finally her right scapula." Dean had listed Johnson and Sailer, who practiced with Senne, in the information she gave to the Bureau.

[¶ 11] After receiving these post-hearing letters, the Bureau notified Dean of its intent to consider the letters and of her opportunity to cross-examine Johnson and Senne upon written request. Dean did not request an opportunity to cross-examine or a supplemental hearing. The Bureau remanded the matter back to the hearing officer for further consideration in light of the additional information.

[¶ 12] In supplemental recommended findings and conclusions, the hearing officer recommended dismissal of Dean's claim for benefits. The hearing officer found the "mid-thoracic describes an area of the mid-back" and Dean "had mid-back problems prior to June 28, 1994 of such severity as to cause her to seek chiropractic treatment on several occasions." The hearing officer found Dean's representations in the claim form, her statement, and her affidavit about no prior mid back problems were "knowingly false" and constituted the intentional making of false statements within the meaning of N.D.C.C. § 65-05-33. The hearing officer also found the misrepresentations were material "because knowledge by the Bureau of the claimant's prior physical problems or treatment history relative to the region of the injury for which the claimant seeks workers compensation benefits is essential to an informed assessment of eligibility."

[¶ 13] The Bureau adopted the hearing officer's findings and conclusions and affirmed its October 3, 1994 dismissal of Dean's claim. The district court affirmed the dismissal,[1] and Dean appealed to this court.

[¶ 14] We review the Bureau's decision, not the decision of the district court, and we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Lucier v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 56, 59 (N.D.1996); N.D.C.C. § 28-32-19. In evaluating the Bureau's findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, but we determine only whether the Bureau reasonably reached its factual conclusions from the weight of the evidence on the entire

---

1. The district court originally dismissed Dean's appeal because her "boilerplate" specifications of error failed to comply with N.D.C.C. § 28-32-15(4). Relying on *Vetter v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 451 (N.D.1996), we reversed and remanded to the district court to consider the merits of Dean's appeal. *See Dean v. Workers Comp. Bureau*, 554 N.W.2d 455, 436 (N.D.1996).

record. *Ollom v. North Dakota Workers Comp. Bureau*, 529 N.W.2d 876, 878 (N.D. 1995).

[¶ 15] At the time of Dean's injury, N.D.C.C. § 65–05–33 [2] said:

Any person claiming benefits or payment for services under this title, who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor. Provided further that:

1. For the purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test results, or other evidence of loss, injury, or expense.

2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall:
   a. Reimburse the bureau for any benefits paid based upon the false claim or false statement, and if applicable, under section 65–05–29.
   b. Forfeit any additional benefits relative to that injury.

To trigger these statutory consequences, "a false statement must be intentional, not inadvertent, and material, not peripheral." *F.O.E. Aerie 2337 v. Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D.1990). A false statement may be sufficiently material to support forfeiture of future benefits, even though it was not sufficiently material to mislead the Bureau into paying initial benefits or to require the reimbursement of initial benefits. *F.O.E. Aerie 2337*, 464 N.W.2d at 200–201.

[¶ 16] Dean asserts she did not willfully file a false claim or make a false statement in connection with her claim for benefits because her injury and treatment were at the T10–11 levels and she had not received a prior injury or treatment at those levels of her back. In rejecting this argument, the hearing officer reasoned:

There is a certain attractiveness to Ms. Dean's explanation, particularly in view of the Bureau's choice of the term "exact," and her rationale that even if she may have been treated for mid-back problems in the past, they did not involve this same "exact" T10–T11 area. Added to this explanation is the fact that Ms. Dean, being a Bureau claims analyst, presumably would expect that by the time a claim was completely processed medical records, including chiropractic treatment history, would most likely be obtained and reviewed. Consequently, she, of anyone, would know that falsely representing a medical history is risky business. This is what makes Ms. Dean's case so strangely puzzling, for if it were only her answers on her claim application, or, for that matter, the answers she gave to Bureau Claims Manager Jeffery Bitz during his interview, that were before me for consideration relative to the issue of intent, I might be inclined to conclude that the Bureau's evidence of an intent to deceive is less than sufficient. However, this is not where the evidence ends. Rather, Ms. Dean's file includes a September 29, 1994 affidavit, in which she unequivocally asserts that "I have never presented for medical care for my mid-back prior to the June 28, 1994 injury," and that "I can state with certainty that I was not experiencing any mid-back problems before the June 28, 1994, injury." This is in direct contradiction to both the March 21, 1995 letter of K.T. Johnson, who relates that he treated her for mid-back problems on eight specific occasions, and the March 22, 1995 letter of Scott Senne, who relates that Ms. Dean "presented" to him on February 14, 1993 "complaining" of among other things, "mid back" pain. While Ms. Dean testified at her March 8, 1995 hearing that her chiropractors evidently ended up treating other parts of her back beyond the prob-

---

**2.** N.D.C.C. § 65–05–33 has been amended twice since then. *See* 1995 N.D. Sess. Laws Ch. 616, § 6 and 1997 N.D. Sess. Laws Ch. 534, § 4.

lem area for which she sought treatment, it is most improbable that her chiropractors would have described their treatment history in the fashion they did in their March 1995 letters if that would have been the case.

[¶ 17] We share the hearing officer's skepticism concerning the sufficiency of the evidence to show an intentional false statement if the only evidence relied on by the Bureau consisted of Dean's answers on the "Workers Claim for Injury" form to the questions "[e]xact part of your body injured" and "Have you had prior problems or injuries to that part of the body?" As worded, those questions are inherently ambiguous. There is no limitation of the period of time or the severity of a "prior problem[ ]" to an "exact part" of the body. During a lifetime, most persons will have experienced some type of "problem[ ]," insignificant as it may be, with every part of the body.

[¶ 18] Yet the information the Bureau attempts to elicit through these broad questions, *i.e.*, whether the current problem is due to a work-related injury or to a previous injury or condition, is clearly material to a worker's claim for benefits. Indeed, giving false information in this area of inquiry "strikes at the heart of the reason for the enactment" of N.D.C.C. § 65–05–33. *F.O.E. Aerie 2337*, 464 N.W.2d at 201 (VandeWalle, J., concurring specially). As the hearing officer correctly observed in this case, "[t]he evident motive of someone who disclaims any prior treatment for problems to that part of the body with which their claim is associated is to divert the Bureau from obtaining information that might be disadvantageous to a favorable eligibility outcome."

[¶ 19] We agree with the hearing officer that, because of the overly broad questions on the form, suspicious answers naturally should lead to further investigation by the Bureau into the issue of intentional falsification. Further investigation, albeit prompted by the hearing officer here, is what occurred, and led to the rather bizarre circumstances of this case. Aware that the Bureau had

serious questions about her prior back problems, Dean bluntly said in an affidavit, "I have never presented for medical care for my mid-back prior to the June 28, 1994, injury." But the information the Bureau received from Johnson and Senne showed Dean had been treated for mid back problems on numerous occasions dating back to 1987. Dean's somewhat disingenuous explanation for not disclosing this information is that, although originally diagnosed with a sprain or strain at "T3–T9," the actual area of the back Krause told her she injured more than two months later was T10–T11. Dean's attempt to limit the meaning of mid back to T10–T11, as opposed to T9, draws a distinction too fine to be credible considered in light of the information the Bureau sought from her.

[¶ 20] A state of mind can rarely be proven directly and must usually be inferred from conduct and circumstantial evidence. *See State v. Miller*, 466 N.W.2d 128, 134 (N.D. 1991). A most troubling circumstance in this case is Dean was a trained claims analyst working for the Bureau. A factfinder reasonably could have inferred from Dean's unique familiarity with Bureau claims procedures that it would be illogical for her to attempt to mislead the Bureau regarding prior medical history and that her statements were simply mistakes rather than intentional misrepresentations. On the other hand, a factfinder could also reasonably infer from Dean's position that she would most likely benefit from keeping the Bureau uninformed about as many prior back problems and treatments as possible and that her statements were intentionally false.

[¶ 21] Under our standard of review, we do not substitute our judgment for that of the Bureau, but determine only whether its factual conclusions were reasonably reached from the weight of the evidence on the entire record. *Ollom*, 529 N.W.2d at 878. We conclude the Bureau reasonably reached its factual conclusion that Dean intentionally made material false statements in connection with her claim for benefits from the weight of the evidence on the entire record.[3]

---

3. Relying on *Mountaire of Delmarva, Inc. v. Glacken*, 487 A.2d 1137 (Del.1984); *Johnson v.* *Bender Const. Co.*, 538 So.2d 1305 (Fla.Ct.App. 1989); *Peterson v. Georgia–Pacific Corp.*, 510

[¶ 22] We affirm the judgment affirming the Bureau's dismissal of Dean's claim.

[¶ 23] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

So.2d 1015 (Fla.Ct.App.1987); and *Vines v. Champion Bldg. Products,* 315 S.C. 13, 431 S.E.2d 585 (1993), Dean asserts in order to trigger the penalties contained in N.D.C.C. § 65–05–33, "the Bureau must show a causal connection between Ms. Dean's condition before her work injury and the injury itself." Because Dean did not present this issue either to the hearing officer during administrative proceedings or to the district court on appeal, we decline to address it. *See Symington v. North Dakota Workers Comp. Bureau,* 545 N.W.2d 806, 810 (N.D.1996); *Shark v. U.S. West Communications, Inc.,* 545 N.W.2d 194, 199 (N.D.1996); *Lamb v. Moore,* 539 N.W.2d 862, 864 (N.D.1995); *Hickey v. Department of Health,* 536 N.W.2d 370, 372 (N.D.1995).