1998 ND 40

Donald HOPFAUF, Claimant
and Appellant,

v.

The NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee,

and

Sioux Falls Construction Company,
Inc., Respondent.

Civil No. 970269.

Supreme Court of North Dakota.

Feb. 12, 1998.

Stephen D. Little of Dietz, Little & Haas, Bismarck, for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, Bismarck, for appellee.

SANDSTROM, Justice.

[¶ 1] Donald Hopfauf appeals from a district court judgment affirming an order of the Workers Compensation Bureau forfeiting Hopfauf's future workers compensation benefits. Because we cannot determine whether the correct legal standard was applied by the

administrative law judge (ALJ), we reverse and remand.

## I

[¶ 2] Donald Hopfauf suffered a work-related injury to his neck and left shoulder on June 5, 1986, while working as a carpenter. The Bureau accepted Hopfauf's claim, and Hopfauf eventually began receiving total disability benefits from the Bureau.

[¶ 3] The Bureau sent Hopfauf several letters requesting verification of his entitlement to continued benefits. On March 9, 1995, July 7, 1995, and January 16, 1996, Hopfauf checked "No" to the Bureau's questions about whether he was employed by any employer, self-employed, or currently looking for work. Hopfauf also checked "No" to the question: "Have you performed any other work, whether on a part-time, full-time or voluntary basis?" Hopfauf completed a "return to work confirmation" card on August 25, 1995, and checked "No" to the question: "Have you returned to work?" Hopfauf completed another "return to work confirmation" card on February 15, 1996, and checked "No" to the question: "Have you done any work?" Hopfauf also signed "false or fraudulent claim warning" notices on August 25, 1995, and September 6, 1995. In response to a Bureau letter dated December 5, 1995, Hopfauf wrote:

> "Responding to the letter I got on Dec 11th—Since my Disability this past year was the only time I did anything I did some lite work for my wife that runs a clerking service for an auction firm I help to count the money & add the sale & help balance the sale I did not get paid for it I just helped her I could only help about 1 to 1½ hrs with out my neck support or be able to lean back on a high back chair. or I will have a lot of pain. my wife since has closed her clerking service"

[¶ 4] The Bureau also received information indicating Hopfauf was working and engaging in various physical activities. The Bureau investigated and learned Hopfauf held an auction clerking license under the name "Don's Clerking," and "Don's Clerking" had been the clerk for 42 auctions. Eyewitness reports were gathered, as well as videotape

surveillance, showing Hopfauf's involvement with various auctions and other physical activities.

[¶ 5] The Bureau subsequently issued a "Notice of Intention to Discontinue/Reduce Benefits," dated January 25, 1996, and issued its order denying further benefits and ordering repayment on March 7, 1996. Hopfauf petitioned for a formal hearing, which was held on October 2, 1996. At the hearing, among the exhibits submitted to the ALJ were Hopfauf's responses to the Bureau's letters seeking verification of his status, the "return to work confirmation" cards, and the Bureau's December 5, 1995, letter.

[¶ 6] The ALJ issued his recommended findings of fact, conclusions of law, and order on October 17, 1996. The ALJ reversed the portion of the Bureau's order requiring repayment of benefits Hopfauf had already received, but found Hopfauf had made false statements, and ordered forfeiture of future benefits. The Bureau adopted the ALJ's decision, and the district court affirmed.

[¶ 7] Hopfauf appeals from the June 26, 1997, memorandum decision and order and from the July 10, 1997, judgment of the Burleigh County District Court. Hopfauf's appeal to the district court was timely under N.D.C.C. § 28–32–15(1). The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15(3), 65–10–01. Hopfauf's appeal to this Court was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01, –32–21.

## II

[¶ 8] "We review the Bureau's decision, not the decision of the district court, and we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law." *Dean v. North Dakota Workers Compensation Bureau*, 1997 ND 165, ¶ 14, 567 N.W.2d 626; *see* N.D.C.C. §§ 28–32–19, –21. "In evaluating the Bu-

reau's findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, but we determine only whether the Bureau reasonably reached its factual conclusions from the weight of the evidence on the entire record." *Dean* at ¶ 14; *see Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979).

## III

[¶ 9] The ALJ began his conclusions of law by quoting the text of N.D.C.C. § 65–05–33, which provided:[1]

"Any person claiming benefits or payment for services under this title, who *willfully* files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor. . . .

"2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury."

(Emphasis added). In paragraph two of his conclusions, the ALJ cited this Court's holding in *F.O.E. Aerie 2337 v. North Dakota Workers Compensation Bureau*, 464 N.W.2d 197 (N.D.1990), in which this Court discussed the application of N.D.C.C. § 65–05–33. The ALJ, paraphrasing *F.O.E. Aerie 2337*, stated "a false statement must be intentional to trigger the statutory consequences of reimbursement and forfeiture of future benefits." The ALJ then quoted *F.O.E. Aerie 2337*, noting a "false statement must be intentional, not inadvertent, and material, not peripheral." *See F.O.E. Aerie 2337* at 201.

[¶ 10] In paragraph six of the conclusions of law, the ALJ defined "work" according to the definition provided in Webster's New

Collegiate Dictionary (1980): " 'Work' is defined as 'activity in which one exerts strength or faculties to do or perform something.' " Applying this definition, the ALJ concluded Hopfauf's volunteer participation in auctions could be "fairly and reasonably . . . viewed as work." The ALJ then concluded Hopfauf had made false statements when he answered "No" to the Bureau's questions: "Have you performed any other work, whether on a part-time, fulltime or voluntary basis?"

[¶ 11] In paragraph nine of the conclusions of law, the ALJ concluded Hopfauf's response to the Bureau's December 5, 1995, letter contained several false statements. Paragraph nine reads:

"The greater weight of the evidence indicates that Exhibit B11 does contain several false and misleading statements. Claimant admits to participating in only one auction and that his participation consisted only of cashier duties. The evidence, including claimant's own admissions, clearly shows that he participated in 35 or 36 auctions during 1994 and 1995. He also performed relief auctioneering, clerking, and ringman duties. The claimant also misled *(whether intentionally or otherwise)* the Bureau by claiming that his wife, not he, owned the clerking business.

"*N.D.C.C. § 65–05–33 does not require the administrative law judge to determine the motivation behind such statements, only whether they were true or false.*"

(Emphasis added).

[¶ 12] Although the specific thrust of Hopfauf's appeal is not clear, his specifications of error to the district court state "the bureau failed to determine whether the Claimant's statements were willful and incorrectly asserted that the Claimant's 'motivation' is not an element of fraud under N.D.C.C, [sic] Section 65–05–33." Hopfauf's argument seems to be he did not consider his participation in the auctions to be work because he was not paid and therefore did not "willfully" submit false answers to the Bureau, as required by N.D.C.C. § 65–05–33. Hopfauf insists the Bureau consistently equ-

1. N.D.C.C. § 65–05–33 has been amended by 1997 N.D. Sess. Laws ch. 534, § 4.

ated work with working for pay, so he did not report his unpaid participation in auctions he considered recreational.

[¶ 13] The ALJ correctly concluded a claimant's motivation is irrelevant under N.D.C.C. § 65–05–33. *See generally Hausauer v. North Dakota Workers Compensation Bureau*, 1997 ND 243, ¶ 14, 572 N.W.2d 426. Although the ALJ, in paragraph two of his conclusions, correctly stated the law from this Court's decision in *F.O.E. Aerie 2337*, and may have correctly applied the law, based on his statements in paragraph nine of the conclusions of law, we are unable to conclude whether the law was correctly applied or not. The ALJ's conclusion he need only determine whether the statements are true or false, however, is contrary to the plain language of the statute requiring false statements to be made "willfully." *See* N.D.C.C. § 65–05–33. As we recently explained in *Hausauer* at ¶ 14 (citations omitted): "[O]nce it is proved a false statement has been made, the Bureau must then prove the act of making the false statement was done intentionally. The Bureau must prove the claimant's state of mind was purposeful in making the false statement." [2] *See also Dean* at ¶ 15; *F.O.E. Aerie 2337* at 201. The ALJ, while finding Hopfauf had made false statements, did not decide whether they were made "intentionally or otherwise."

[¶ 14] Thus, regardless of whether, as the Bureau contends, "the evidence amply supports a forfeiture of workers compensation benefits for false statements under N.D.C.C. § 65–05–33," the ALJ did not make this finding, and it is not this Court's role on appeal to decide whether Hopfauf "willfully" submitted false statements to the Bureau. *See Dean* at ¶ 14; *see also Jones v. Ahlberg*, 489 N.W.2d 576, 579 (N.D.1992) (reversing and remanding case where "the trial court did not clearly enunciate the standard of liability ... [and][s]ome of the court's statements indicate that the court may have been using" the wrong standard). We note, however, a state of mind can rarely be proven directly;

it must usually be inferred from conduct and circumstantial evidence. *See Hausauer* at ¶ 14; *Dean* at ¶ 20.

## IV

[¶ 15] Hopfauf also argues violations of N.D.C.C. § 65–05–33 must be proved by clear and convincing evidence rather than by a preponderance of the evidence. We have previously applied the preponderance-of-the-evidence standard to N.D.C.C. § 65–05–33. *See, e.g., Hausauer* at ¶ 13. Hopfauf, however, failed to argue for the application of a heightened standard of proof at the administrative hearing or in his specifications of error, as required by N.D.C.C. § 28–32–15(4). Rather, in his specifications of error, Hopfauf specifically states, "A preponderance of the evidence does not show a willful intent to deceive regarding a material fact." We thus decline to address this issue. *See, e.g., Symington v. North Dakota Workers Compensation Bureau*, 545 N.W.2d 806, 810 (N.D.1996).

## V

[¶ 16] Because we are unable to conclude whether the ALJ's decision is in accordance with the law, we reverse and remand for a finding of whether Hopfauf "willfully" made false statements to the Bureau.

[¶ 17] NEUMANN, MARING and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 18] Because I believe the majority confuses whether a false statement is willful with the motivation for making the false statement, I respectfully dissent.

[¶ 19] I agree, as we said in *F.O.E. Aerie 2337 v. North Dakota Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D.1990), that to "trigger the statutory consequences, a false statement must be intentional, not inadver-

---

**2.** In addition to requiring a willfully-made false statement, the Bureau must also prove the statement is material. *See Hausauer* at ¶ 12. Where, as in this case, the Bureau "is seeking forfeiture of future benefits, a false claim or false statement

is sufficiently material if it is a statement which could have misled the Bureau or medical experts in a determination of the claim." *Hausauer* at ¶ 18.

tent ..." or, as we said in *Hausauer v. North Dakota Workers Comp. Bureau*, 1997 ND 243, ¶ 14, 572 N.W. 2d 426 "[t]he Bureau must prove the claimant's state of mind was purposeful in making the false statement." However, I do not equate the requirement the false statement be intentional or the maker's state of mind be purposeful with a requirement that it be intentionally made to mislead. It is enough, I believe, the maker intended to make a false statement. There is no requirement that the intent be to deceive the Bureau. I read the ALJ's comments, as cited in the majority opinion, that the Bureau was misled, whether or not the claimant intentionally misled the Bureau, and that it was not necessary to determine the motivation for making the false statements to mean only that the reason for making the false statements is not material if the claimant intended to make them. Thus, for example, if the claimant made the false statements because he did not want it a matter of record that he worked at a sale, rather than to mislead the Bureau, it would make no difference. The false statement was still purposefully made. *Compare* Black's Law Dictionary (6th edition) "[i]n civil actions, the word [willfully] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental."

[¶ 20] In his recommended Conclusions of Law, subsequently adopted by the Bureau, the ALJ, at paragraph II, concluded in part "[b]ut a false statement must be intentional to trigger the statutory consequences of reimbursement and forfeiture of future benefits. *F.O.E. Aerie 2337*, i.d. at 200. A false statement must be intentional, not inadvertent, and material, not peripheral."

[¶ 21] If there is any doubt as to the meaning of the words in paragraph IX, and I do not believe there is, they must be read in light of the statements in paragraph II. When so read, they can only mean, as the ALJ said, that the false statement must only be intentionally made and that it is not necessary to determine the motivation or purpose for making them. I believe the majority misconstrues a few selected words of the ALJ. In so doing, I fear the majority has now set up an additional hurdle, not required by the statute, which will require proof not only that the claimant intentionally made a false statement but that it was made for the purpose of misleading the Bureau. Thus it will be a defense that the claimant intended to mislead someone other than the Bureau even if the false statement did, in fact, mislead the Bureau. That cannot be the purpose of section 65–05–33. *See, e.g., F.O.E. Aerie 2337*, at 201 (VandeWalle, J., concurring specially) (concluding reason for enactment of section 65–05–33 is "statement which could have misled the Bureau ..."). I would affirm the judgment of the district court affirming the order of the Bureau forfeiting Hopfauf's future workers compensation benefits.

[¶ 22] Gerald W. Vande Walle, C.J.