1999 ND 187

**Wade RENAULT, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee.**

**No. 990167.**

Supreme Court of North Dakota.

Oct. 20, 1999.

582

Douglas L. Broden, Broden, Broden & Walker, Devils Lake, N.D., for claimant and appellant.

Leo F.J. Wilking, Special Assistant Attorney General, Fargo, N.D., for appellee.

KAPSNER, Justice.

[¶ 1] Wade Renault appeals from a judgment affirming a North Dakota Workers Compensation Bureau order requiring him to forfeit future benefits under N.D.C.C. § 65–05–33 for willfully making material false statements in a July 1992 reapplication for benefits and in a November 1992 telephone conversation with a Bureau claims analyst. Renault argues the Bureau's findings about those two statements are not supported by a preponderance of the evidence. We affirm.

I

[¶ 2] On January 9, 1992, Renault was injured when he fell from scaffolding during the course of his employment as a laborer for Aaker Masonry. He was treated for a "chest wall contusion" and possible rib fracture at an emergency room that afternoon. After Renault filed an initial claim for workers compensation benefits, he completed a Bureau request for additional information which stated he left work at 2:30 p.m. on January 9 and returned to work on January 30, 1992. Except for the January 9 visit to the emergency room, however, Renault worked through January 30, 1992, when he was laid off. The Bureau paid Renault $602.85 in disability benefits for January 9 through January 30, 1992.

[¶ 3] Renault returned to work as a laborer for Aaker Masonry in April 1992, and he continued working there until late May 1992. According to Renault, he quit because he was physically unable to do the work. According to Randy Aaker of Aaker Masonry, Renault quit because he was laid off or found a better job and not because he was injured or unable to do the job. In July 1992, Renault filed a reapplication for workers compensation benefits, stating his condition "became worse" on "3/23/92 approx."; he had been "unable to work" since his "last date worked" on "3/23/92"; and on "3/23/92" Dr. Antonios advised him not to work.

[¶ 4] Renault began working at Grand Forks Truss in September 1992, but he was laid off from that job on November 20, 1992. On November 30, 1992, Renault had a telephone conversation with Colleen Strom, a Bureau claims analyst. Renault told Strom his job at Grand Forks Truss

was "a modified job ... [j]ust pushing buttons." According to Strom, Renault told her that "he was doing some light duty work," and she then contacted Grand Forks Truss and was informed Renault's job involved manual labor, including "lifting lumber, trusses, boxes of plates and running the press. Much bending, twisting and lifting to a max of about 80–100" pounds.

[¶ 5] In March 1993, the Bureau denied Renault's July 1992 reapplication for benefits, and he appealed. During that appeal, the Bureau discovered it had erroneously paid Renault disability benefits from January 9 through January 30, 1992. The Bureau subsequently issued an order denying Renault further benefits, concluding he willfully made material false statements under N.D.C.C. § 65–05–33, and ordering him to forfeit future benefits and repay the $602.85 in erroneously paid benefits.

[¶ 6] Renault requested and received a formal evidentiary hearing. The administrative law judge (ALJ) who conducted the hearing recommended the Bureau find Renault did not willfully make a false statement about returning to work on January 30, 1992, but he nevertheless was obligated to repay the Bureau $602.85 in erroneously paid benefits. The ALJ did not make a recommended finding about Renault's statements in his July 1992 reapplication for benefits and his November 1992 telephone conversation with Strom, because the ALJ said those statements did not result in the payment of benefits. Instead, the ALJ analyzed only Renault's false statement he returned to work on January 30 and recommended the Bureau find Renault was not required to forfeit future benefits because that false statement was not made willfully.

1. The Bureau did not make a finding regarding whether Renault willfully made the false statement he returned to work on January 30, 1992. The Bureau nevertheless ordered Renault to repay the $602.85 in erroneously paid benefits. Renault does not dispute the Bureau's authority to require him to repay the

[¶ 7] The Bureau rejected the ALJ's recommendation, stating the ALJ erroneously ignored Renault's statements in his July 1992 reapplication and his November 1992 telephone conversation because the ALJ said those statements did not result in the payment of benefits. The Bureau explained the correct standard for materiality under N.D.C.C. § 65–05–33 is whether willful false statements could have misled the Bureau or a medical expert in deciding a claim and found Renault willfully made material false statements in his July 1992 reapplication and in the November 1992 telephone conversation.[1] The Bureau ordered Renault to forfeit all future benefits for his injury. The district court affirmed the Bureau's decision, and Renault appealed.

## II

[¶ 8] Under N.D.C.C. §§ 28–32–19 and 28–32–21, we must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or its decision violates the claimant's constitutional rights or deprives the claimant of a fair hearing. *Vernon v. North Dakota Workers Comp. Bur.*, 1999 ND 153, ¶ 8, 598 N.W.2d 139.

[¶ 9] The Bureau's order required Renault to forfeit future benefits under N.D.C.C. § 65–05–33, which during the time relevant to this proceeding provided[2]:

Any person claiming benefits or payment for services under this title, who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from

$602.85 in erroneously paid benefits under N.D.C.C. § 65–05–29(3).

2. The legislature amended N.D.C.C. § 65–05–33 in 1995 N.D. Sess. Laws ch. 616, § 6, and 1997 N.D. Sess. Laws ch. 534, § 4.

employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor. Provided further that:

1. For the purposes of this section, "statement" includes any testimony, claim form, notice, proof of injury, proof of return to work status, bill for services, diagnosis, prescription, hospital or doctor records, X-ray, test results, or other evidence of loss, injury, or expense.

2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall:

   a. Reimburse the bureau for any benefits paid based upon the false claim or false statement, and if applicable, under section 65–05–29.

   b. Forfeit any additional benefits relative to that injury.

[¶ 10] The administrative penalties authorized by N.D.C.C. § 65–05–33 are not triggered by a claimant's inadvertent mistake on a bureaucratic form, or a claimant's subjective description of job duties or ability to work. *See Vernon,* 1999 ND 153, ¶ 13, 598 N.W.2d 139. Rather, as we explained in *Hausauer v. North Dakota Workers Comp. Bur.,* 1997 ND 243, ¶¶ 12–13, 18, 572 N.W.2d 426 (citations omitted):

To trigger the statutory consequences under § 65–05–33 for a false claim or false statement by a person claiming benefits or payment of services, the Bureau must prove: (1) there is a false claim or false statement; (2) the false claim or false statement is willfully made; and (3) the false claim or false statement is made in connection with any claim or application under this title.

We additionally require the Bureau to prove the false statement is material. We have defined "willfully" in the context of this statute's civil penalties as conduct engaged in intentionally, not inadvertently.

Once triggered, N.D.C.C. § 65–05–33 provides for both criminal and civil penalties. The civil penalties include reimbursement to the Bureau "for any benefits paid based upon the false claim or false statement" and "forfeit[ure of] any additional benefits relative to that injury." In order to trigger the civil penalties, the Bureau must prove the elements of N.D.C.C. § 65–05–33 by a preponderance of the evidence.

. . . .

If the Bureau is seeking forfeiture of future benefits, a false claim or false statement is sufficiently material if it is a statement which could have misled the Bureau or medical experts in a determination of the claim.

### III

[¶ 11] Renault argues the Bureau used the wrong burden of proof to decide he willfully made material false statements. He argues due process requires the Bureau to prove the elements of N.D.C.C. § 65–05–33 by clear and convincing evidence, because the statute is punitive in nature[3] and the forfeiture of future benefits constitutes the taking of an entitlement.

[¶ 12] In *Hopfauf v. North Dakota Workers Comp. Bur.,* 1998 ND 40, ¶ 15, 575 N.W.2d 436, a claimant argued the Bureau was required to prove a civil violation of N.D.C.C. § 65–05–33 by clear and convincing evidence. We said "[w]e have previously applied the preponderance-of-the-evidence standard to N.D.C.C. § 65–05–33." *Hopfauf,* at ¶ 15 (citing *Hausauer,* 1997 ND 243, ¶ 13, 572 N.W.2d

3. In *State v. Stewart,* 1999 ND 154, ¶ 25, 598 N.W.2d 773, we recently concluded the administrative sanctions under N.D.C.C. § 65– 05–33 constitute a civil sanction and not a criminal penalty for double jeopardy purposes.

426).[4] In *Hopfauf* at ¶ 15, we declined to decide whether the Bureau must prove a civil violation of N.D.C.C. § 65–05–33 by clear and convincing evidence, however, because the claimant failed to argue for the heightened standard of proof at the administrative hearing, or in his specifications of error to the district court.

[¶ 13] Here, the record does not reflect Renault raised this issue during the administrative proceeding. Renault's specification of errors to the district court did not mention the clear and convincing standard of proof and framed this issue as "the Bureau's Conclusion of Law is not in accordance with the law as the Bureau failed to use the proper legal standard in determining whether [Renault] willfully made false statements with an intent to defraud the Bureau." Renault's brief to the district court cited *Hopfauf* and said because N.D.C.C. § 65–05–33 is punitive in nature and the forfeiture of future benefits constitutes the taking of an entitlement, due process requires the Bureau to prove its case by clear and convincing evidence. Renault's brief to this Court said a claimant's right to workers compensation benefits is a property right under *Beckler v. North Dakota Workers Comp. Bur.*, 418 N.W.2d 770 (N.D.1988),[5] and summarily cited the due process clauses of the federal and state constitutions.

[¶ 14] Renault has cited no other authorities or marshaled any additional argument or analysis to support his claim that due process requires the Bureau to prove civil violations of N.D.C.C. § 65–05–33 by clear and convincing evidence. *See Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that before state may terminate parental rights, due process requires state

to prove allegations by clear and convincing evidence). *Cf. Fargo Foods, Inc. v. Bernabucci*, 1999 ND 120, ¶ 19, 596 N.W.2d 38 (stating fraud must be proven by clear and convincing evidence). Parties must do more than submit bare assertions to adequately raise a constitutional issue. *Unser v. North Dakota Workers Comp. Bur.*, 1999 ND 129, ¶ 14, 598 N.W.2d 89; *Jarvis v. Jarvis*, 1998 ND 163, ¶ 33, 584 N.W.2d 84. We therefore decline to address Renault's perfunctory argument that due process requires the Bureau to prove civil violations of N.D.C.C. § 65–05–33 by clear and convincing evidence.

IV

[¶ 15] Renault argues the Bureau's findings he willfully made material false statements in the July 1992 reapplication and the November 1992 telephone conversation are not supported by a preponderance of the evidence. He argues the Bureau did not reasonably reach its factual conclusions in light of the ALJ's recommendation.

[¶ 16] In deciding whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings of fact, or substitute our judgment for the Bureau's decision. *Vernon*, 1999 ND 153, ¶ 8, 598 N.W.2d 139. Instead, our review of the Bureau's findings is limited to determining whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Id.* If the Bureau rejects a hearing officer's recommendation, it must sufficiently explain its rationale for not following the recommendation. *Id.* at ¶ 10. The

---

4. We review the Bureau's findings of facts under the preponderance of evidence standard. *See* N.D.C.C. §§ 28–32–19 and 28–32–21. We have recognized, however, "an evidentiary standard of proof differs from a standard of review employed by an appellate court to a decision in which the standard of

proof has already been applied." *In re Dvorak*, 1998 ND 134, ¶ 16, 580 N.W.2d 586.

5. Our decision in *Beckler*, 418 N.W.2d at 772–73, emphasized the *continuing* right to disability benefits is a property right which may not be terminated without due process.

Bureau may reject a hearing officer's recommendation on issues of credibility. *Id.*

[¶ 17] Renault concedes his July 1992 reapplication falsely stated his last day of work was "3/23/92." He argues he inadvertently used the wrong date on the reapplication and the correct date should have been 5/23/92, which coincides with his last day of work for Aaker Masonry. Renault also argues statements in his November 1992 telephone conversation with Strom were not false or willful. He argues his statements describing his job at Grand Forks Truss involved his perception, and he should not be held to a vocational definition of light work.

[¶ 18] An individual's state of mind can rarely be proven directly and usually must be inferred from conduct and circumstantial evidence. *E.g., Dean v. North Dakota Workers Comp. Bur.*, 1997 ND 165, ¶ 20, 567 N.W.2d 626.

[¶ 19] Renault's July 1992 reapplication for benefits stated his condition "became worse" on "3/23/92 approx."; he had been "unable to work" since his "last date worked" on "3/23/92"; and on "3/23/92" Dr. Antonios advised him not to work. Renault's subjective statement he was "unable to work" clearly does not carry the same weight as a similar statement by a doctor. Renault saw Dr. Lorenz on May 22, 1992, and Dr. Antonios on June 5, 1992. Medical records from Dr. Lorenz and Dr. Antonios do not indicate they advised Renault not to work. Renault's employer, Randy Aaker, testified Renault quit working in May 1992, because he was laid off or because he found a better job and not because he was injured or physically unable to work.

[¶ 20] Renault's November 1992 telephone conversation with Strom about the nature of his job at Grand Forks Truss indicated he was performing "a modified job ... [j]ust pushing buttons." Strom testified Renault told her that "he was doing some light duty work." Renault testified he lifted two by fours about fifty times a day, and with the help of one or two other employees, he lifted completed eighty to one hundred pound trusses about once every three minutes throughout an eight hour shift. Stuart Johnson, the owner of Grand Forks Truss, testified Renault's job involved "physical labor."

[¶ 21] Renault offers several explanations to support his claim his statements in the July 1992 reapplication and in the November 1992 telephone conversation were not willful false statements. He argues considering his education level and lack of experience dealing with legal matters, the fact his reapplication was completed several weeks after he left work and originally saw both Dr. Antonios and Dr. Lorenz, and the ease in which a person can write the wrong number month when indicating a date in numerals, a reasonable inference is his misstatements on the reapplication were not intentional. The context and number of misstatements on Renault's July 1992 reapplication, however, supports a contrary inference that he willfully made false statements. Moreover, although Renault's subjective description of his job at Grand Forks Truss as light duty work should not be measured against vocational job descriptions, his description of the job as just pushing buttons was misleading when objectively compared to his own testimony about his duties. The circumstantial evidence and context of Renault's statements to Strom, coupled with his prior or false statements on his reapplication, supports an inference Renault willfully made false statements to Strom.

[¶ 22] We do not make independent findings of fact or substitute our judgment for the Bureau. *Vernon*, 1999 ND 153, ¶ 8, 598 N.W.2d 139. Rather, we determine whether a reasoning mind reasonably could have determined the Bureau's factual conclusions were supported by the weight of the evidence. *Id.* Although we may have taken a different view of the evidence if we had been the trier-of-fact, *see Stewart v. North Dakota Workers Comp. Bur.*, 599 N.W.2d 280, 1999 ND 174,

¶ 40, we conclude a reasoning mind reasonably could conclude Renault willfully made false statements in his July 1992 reapplication for benefits and the November 1992 telephone conversation with Strom.

[¶ 23] Renault argues his statements on the July 20, 1992 reapplication were not material, because benefits may not commence more than thirty days before a reapplication under applicable law, and he therefore could not have received benefits for lost work before June 20, 1992.

[¶ 24] In *Hausauer*, 1997 ND 243, ¶ 18, 572 N.W.2d 426, we explained a false claim or statement is sufficiently material if it could have misled the Bureau or medical experts in deciding a claim. *See F.O.E. Aerie 2337 v. North Dakota Workers Comp. Bur.*, 464 N.W.2d 197, 200–01 (N.D. 1990) (stating a false statement must be material, not peripheral). Renault's statements he had been "unable to work" since his "last date worked" on "3/23/92", he had been advised on 3/23/92 by Dr. Antonios not to work, and his job at Grand Forks Truss was just pushing buttons all involved his ability to work, which is highly pertinent to a disability claim. The Bureau adequately explained it rejected the ALJ's recommendation and made additional findings about statements in the July 1992 reapplication and the November 1992 telephone conversation, because those statements could have misled the Bureau or a medical expert in the determination of Renault's pending claim. Although Renault may not have been entitled to disability benefits for missing work more than thirty days before his July 20, 1992 reapplication, a reasoning mind could reasonably conclude Renault's statements could have misled the Bureau about his eligibility for future benefits. We conclude Renault's misstatements were sufficiently material under N.D.C.C. § 65–05–33 to warrant forfeiture of future benefits, and the Bureau's finding Renault's willful false statements were material is supported by a preponderance of the evidence.

[¶ 25] We affirm the district court judgment.

[¶ 26] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., concur.

