2001 ND 38

**Wilbur SNYDER, Claimant
and Appellant,**

v.

**NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee.**

**No. 20000204.**

Supreme Court of North Dakota.

Feb. 20, 2001.

Deborah J. Carpenter, Carpenter Law Offices, Bismarck, ND, for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, ND, for appellee.

KAPSNER, Justice.

[¶ 1] Wilbur Snyder has appealed a judgment affirming a North Dakota Workers Compensation Bureau ("Bureau") order affirming an earlier order requiring Snyder to forfeit all further benefits relating to his 1988 injury and to repay benefits of $3,741.64. We affirm.

I

[¶ 2] Snyder suffered a work-related injury in 1988. The Bureau accepted liability and awarded benefits. In 1990, the Bureau notified Snyder "we have changed your status to permanent total disability" and that he would receive total disability payments "as long as you remain totally disabled." In 1998, the Bureau initiated an investigation to determine if Snyder was working at the Midtowner Restaurant in Mandan. On November 4, 1998, the Bureau mailed Snyder a notice of intention to discontinue benefits, stating, in part:

> THE BUREAU HAS RECEIVED EVIDENCE YOU HAVE MADE FALSE STATEMENTS. YOU FAILED TO REPORT TO THE BUREAU THE RECEIPT OF INCOME FROM WORK. ACCORDINGLY, AND PURSUANT TO 65–05–33, ALL BENEFITS ARE FORFEITED AS OF 11/25/98. A LEGAL ORDER WILL BE FORTHCOMING.

In an order of December 21, 1998, the Bureau found Snyder had performed a number of activities at the Midtowner Restaurant, for which the owner paid him $80 per month and gave him $30–60 per month in meals. The Bureau found that on 12 income and work status cards mailed to Snyder in 1998, Snyder was asked, "Have you done any work, whether for pay or not?" The Bureau found Snyder twice did not respond to the question, eight times answered in the negative, and twice indicated he had worked and received $80 per month. The Bureau further found Snyder willfully made false statements in connection with his claim, forfeited any additional benefits in connection with the claim, and was required to repay benefits of $3,741.64.

[¶ 3] On December 23, 1998, Snyder requested a hearing "on the issues of fraud and alleged overpayment." On May 11, 1999, a temporary administrative law judge ("TALJ") issued a notice of hearing and a specification of issues, stating the issues would be whether Snyder made willful false statements about his work activities and receipt of income, and whether he failed to report income to the Bureau. After a hearing on June 30, 1999, the TALJ issued recommended findings of fact, conclusions of law, and order on August 9, 1999. The TALJ recommended finding:

X.

... The claimant said that since the end of May 1998, he had been opening the Midtowner Restaurant on a daily basis at 5:00 a.m. and staying until approximately 7:00 a.m. The claimant admitted that he routinely opened the restaurant for business, baked rolls, turned on the grill, made coffee, and signed receipts for delivery of bread. He also disclosed that if a customer came in, he would cook and serve the meal and collect money at the cash register. The claimant also admitted that he periodically picks up supplies from Barlow's Supervalue [sic] and also assisted Joe Zachmeier with some light maintenance work at the restaurant.... [T]he claimant finally admitted that he had received a cash payment of $80 per month from Zachmeier from June through September 1998 for work that he did at the Midtowner Restaurant.

. . . .

## XIII.

The Bureau also contends that it mails out Income and Work Status Cards to claimants every 28 days to verify their continued eligibility to receive disability benefits. In 1998, . . . [o]n these cards the claimant was asked, "Have you done any work, whether for pay or not?" The claimant responded "No" on all of the cards except the February 6, 1998, June 1, 1998, October 19, 1998, and December 1, 1998, cards. On the February and June cards the claimant did not respond to the question, but on the October and December 1998 cards he indicated that he had done work and received $80 per month.

. . . .

## XXIII.

The claimant testified in response to questioning from his attorney that he had never denied the activities that he performed at the Midtowner Restaurant and it was his position that such activities did not constitute "work". Instead, he said it was simply therapy.

The TALJ also recommended finding the owner of the Midtowner Restaurant admitted paying Snyder $80 per month and giving him $30–60 of food per month, and that Snyder was listed as an employee with Job Service North Dakota.

[¶ 4] The TALJ recommended concluding:

## XVI.

. . . This hearing officer concludes, as a matter of law, that the greater weight of the evidence supports a finding that there were false claims or statements made by the claimant, Wilbur Snyder, and that such false statements were made "willfully", and that the act of making the false statements as previously identified in the findings of fact was done intentionally. Further, the greater

weight of the evidence has clearly established that the claimant's state of mind was purposeful in making the false statements. Snyder admitted to such at the hearing.

. . . .

## XXV

This hearing officer concludes, as a matter of law, that the false claims or false statements attributable to the claimant (Wilbur Snyder) are sufficiently material and that such false statements could have misle[ ]d the Bureau in their determination of the claim. The information provided to the Bureau by the claimant was less than candid and forthright. Such information certainly could have misle[ ]d the Bureau in its efforts to verify the claimant's entitlement to continued benefits. The greater weight of the evidence also supports a finding that the claimant's false statements were sufficiently material to support a forfeiture of future benefits.

[¶ 5] The TALJ proposed ordering "that the Bureau's Order Denying Further Benefits be affirmed." In a final order of October 1, 1999, the Bureau modified four of the TALJ's recommended findings and rejected a commentary on the evidence made by the TALJ. The Bureau otherwise adopted the TALJ's recommended findings and conclusions, and ordered "that the Bureau's final Order dated December 21, 1998, is AFFIRMED and that the claimant shall forfeit all further benefits and shall be obligated to repay benefits in the amount of $3,741.64."

[¶ 6] Snyder appealed to the district court, which affirmed the Bureau's order. Snyder appealed to this Court.

## II

[¶ 7] On appeal, we review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to

respect. *Wanstrom v. North Dakota Workers Comp. Bureau*, 2000 ND 17, ¶ 5, 604 N.W.2d 860. "The interpretation of a statute is a question of law, which is fully reviewable by this court." *Id.* We recently reiterated the scope of our review:

> On appeal, we review the decision of the Workers 'Compensation Bureau. *Siewert v. North Dakota Workers Comp. Bureau*, 2000 ND 33, ¶ 18, 606 N.W.2d 501. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or its rules or procedure deprived the claimant of a fair hearing. *Negaard–Cooley v. North Dakota Workers Comp. Bureau*, 2000 ND 122, ¶ 7, 611 N.W.2d 898. We exercise restraint in determining whether the Bureau's findings of fact are supported by a preponderance of the evidence and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Renault v. North Dakota Workers Comp. Bureau*, 1999 ND 187, ¶ 16, 601 N.W.2d 580.

*Jacobson v. North Dakota Workers Comp. Bureau*, 621 N.W.2d 141, 2000 ND 225, ¶ 7.

### III

■ [¶ 8] The Bureau terminated Snyder's benefits because he made false statements about work activities and failed to report income from work. Snyder contends the Bureau was not entitled to seek return-to-work information from him. Section 65–05–08(3), N.D.C.C., requires individuals receiving disability or rehabilitation benefits to report to the Bureau:

> Any employee who is eligible for, or receiving disability or rehabilitation benefits under this title shall report any wages earned, from part-time or full-time work from any source. If an employee fails to report wages earned, the employee shall refund to the bureau any disability or vocational rehabilitation benefits overpaid by the bureau for that time period.... If the employee willfully fails to report wages earned, the employee is subject to the penalties in section 65–05–33. An employee shall report whether the employee has performed work or received wages. The bureau periodically shall provide a form to all injured employees receiving disability or rehabilitation benefits which the injured employee must complete to retain eligibility for further disability or rehabilitation benefits, regardless of the date of injury or claim filing.... An injured employee who is receiving disability or vocational rehabilitation benefits must report any work activities to the bureau whether or not the injured employee receives any wages.... For purposes of this subsection, "work" does not include routine daily activities of self-care or family care, or routine maintenance of the home and yard, and "activities" does not include recreational gaming or passive investment endeavors.

Snyder argues N.D.C.C. § 65–05–08, providing for monthly reports to the Bureau, is inapplicable to him because it was not in effect at the time of his work injury.

■ [¶ 9] Unless otherwise provided, statutes in effect on the date of an injury govern workers compensation benefits. *Wanstrom*, 2000 ND 17, ¶ 7, 604 N.W.2d 860. Since 1919, what is now codified as N.D.C.C. § 65–05–04 has provided the Bureau may review a compensation award at any time and may end, diminish, or increase the compensation previously awarded. When the Bureau changed Snyder's status to permanent total disability, it advised Snyder he would receive total dis-

ability payments "as long as you remain totally disabled." Section 65–05–04, N.D.C.C., is a legislative recognition that a benefit recipient's status may change over time. Thus, the Bureau may appropriately investigate whether a recipient continues to be disabled. Section 65–05–08(3), N.D.C.C., is a legislative recognition that inquiring about a recipient's work activities is an appropriate part of such an investigation. Section 65–05–08(3), N.D.C.C., specifically provides a recipient of disability benefits must complete reporting forms "to retain eligibility for further disability or rehabilitation benefits . . . regardless of the date of injury or claim filing." We conclude Snyder's argument is without merit.

[¶ 10] Snyder argues N.D.C.C. § 65–05–08 "does not even specifically address those claimants who are on permanent and total disability. . . . The statute clearly addresses temporary disability." The statute does not distinguish between permanent or temporary disability. It addresses all recipients of disability benefits by referring only to "disability," which N.D.C.C. § 65–01–02(15) defines as "loss of earnings capacity and may be permanent total, temporary total, or partial."

## IV

[¶ 11] Snyder contends the Bureau did not afford him procedural due process before terminating his benefits. Snyder argues:

> The first manner in which the procedure is deficient is the usage of the RTW cards [1] for injured workers who have reached retirement age and whose benefits have been "transformed" from temporary status to a recognition that they will not meaningfully re-enter the work force.

We have already concluded the reporting requirement of N.D.C.C. § 65–05–08(3) applies to Snyder. Thus, we conclude the Bureau did not deny Snyder procedural

due process by sending him forms for reporting work activities and income.

[¶ 12] Snyder argues a second manner in which the Bureau's procedure was deficient "is the cards themselves. The RTW cards do not anywhere define or put the claimants on notice of what the Bureau will consider 'work'." Section 65–05–08(3), N.D.C.C., requires a recipient of disability or rehabilitation benefits to "report any work activities to the bureau whether or not the injured employee receives any wages." Neither the legislature nor the Bureau has defined "work" for purposes of the reporting requirement of N.D.C.C. § 65–05–08(3). We recently said:

> The lack of either a statutory or administrative-rule definition of "work" leaves the issue of whether certain activity is "work" to an after-the-fact determination. To the extent this may seem to give inadequate notice of what the Bureau considers "work," words not defined in a statute are to be understood in their ordinary sense. N.D.C.C. § 1–02–02. This means not only that the Bureau may not agree with the claimant but, without a definition in the statute or a rule, the Bureau takes the risk the courts will not agree with the Bureau's application of the term to particular facts.

*Jacobson,* 2000 ND 225, ¶ 15 n. 1, 621 N.W.2d 141. Snyder opened the Midtowner Restaurant at 5:00 a.m. daily and stayed until 7:00 a.m., baked rolls, turned on the grill, made coffee, signed receipts for deliveries, cooked and served meals to customers, collected money at the cash register, picked up supplies, and performed maintenance work, for which he received cash payments of $80 per month and food worth $30–60 per month. We conclude, as a matter of law, Snyder's restaurant activities constitute "work" in its ordinary sense.

---

1. The Bureau provides recipients of disability benefits a card each month for reporting income and whether the recipient has done any work.

[¶ 13] Snyder argues his activities at the restaurant were "for his benefit as therapy or self-care," and not "work," which N.D.C.C. § 65–05–08(3) provides "does not include routine daily activities of self-care." The term "self-care" has not been defined for purposes of workers compensation benefits.[2] While Snyder's restaurant activities may be therapeutic for him, they, nevertheless, constitute work, and we are not persuaded they fall within the exception for "self-care."

V

[¶ 14] Snyder contends the Bureau did not meet its burden of proving he willfully made false statements in violation of N.D.C.C. § 65–05–33, which provides, in part:

1. A person is guilty of a class A misdemeanor if that person is claiming benefits or payment for services under this title, and that person:

    a. Willfully files a false claim or makes a false statement.

    . . . .

    c. Has a claim for disability benefits that has been accepted by the bureau and willfully fails to notify the bureau of:

    (1) Work or other activities as required under subsection 3 of section 65–05–08;

    (2) The receipt of income from work; or

    (3) An increase in income from work.

    . . . .

3. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any

additional benefits relative to that injury.

Snyder argues:

A difference of opinion [about the meaning of "work"] does not amount to fraud or false statements. Wilbur considered his activities at the Midtowner therapy after his heart attack, in the absence of any direction from the Bureau. He got approval from his doctor to do it since formal rehab did not work for him before. He did not consider the money he got to be "pay", since it was given to him by his grateful friend. . . . It was error for the ALJ, the Bureau, and the lower court to ignore this evidence of record that Wilbur's statements were not "willful" to trigger the termination.

[¶ 15] Here, there was more than a difference of opinion about the meaning of "work." Based on the common understanding of work, Snyder was making a false statement when he reported no work activity, *see Jacobson*, 2000 ND 225, ¶ 15, 621 N.W.2d 141, while he was opening the Midtowner Restaurant at 5:00 a.m. daily, baking rolls, turning on the grill, making coffee, signing receipts for deliveries, cooking and serving meals to customers, collecting money at the cash register, picking up supplies, and performing maintenance work for cash payments of $80 per month and food worth $30–60 per month.

[¶ 16] "Section 65–05–33, N.D.C.C., authorizes the Bureau to use administrative proceedings to recoup benefits paid to a claimant based upon a false claim or statements and to require a claimant to forfeit future benefits for that injury." *Vernon v. North Dakota Workers Comp. Bureau*, 1999 ND 153, ¶ 12, 598 N.W.2d 139. To trigger the statutory consequences of N.D.C.C. § 65–05–33, for a false claim or statement, the Bureau must prove a claimant willfully made a material false claim or statement in connection with a claim or application under Title 65,

2. Section 50–25.2–01(13), N.D.C.C., provides that "self-care" "includes maintaining personal hygiene, eating, and dressing," for purposes of vulnerable adult protection services.

N.D.C.C. *Jacobson,* 2000 ND 225, ¶¶ 9, 10, 621 N.W.2d 141. To be willful, conduct must be engaged in intentionally, not inadvertently. *Id.* at ¶ 9. If an injured employee has willfully made a false statement in connection with a claim, "[w]e additionally require the Bureau to prove the false statement is material." *Hausauer v. North Dakota Workers Comp. Bureau,* 1997 ND 243, ¶ 12, 572 N.W.2d 426. "If the Bureau seeks reimbursement for benefits paid, the level of materiality required is proof by the Bureau that the false claim or false statement caused the benefits to be paid in error." *Jacobson,* at ¶ 10. "A false claim or false statement is sufficiently material for forfeiture of future benefits if it is a statement which could have misled the Bureau or medical experts in a determination of the claim." *Id.*

[¶ 17] We addressed the materiality of a failure to report income in *Unser v. North Dakota Workers Comp. Bureau,* 1999 ND 129, ¶¶ 18, 22, 598 N.W.2d 89:

A failure to report income is, by the very nature of the violation, material to the Bureau's ability to determine a claimant's entitlement to benefits and to calculate the amount of benefits. By failing to report income a claimant impedes the Bureau's process of determining eligibility.

. . . .

When the claimant's wrongful concealment of income impedes the Bureau's proof of materiality of the nondisclosure for reimbursement purposes, fairness dictates the claimant, not the Bureau, suffer the consequences.

[¶ 18] Snyder failed to disclose work activities and income he received in connection with his unreported work activities. Under *Unser,* 1999 ND 129, ¶ 18, 598 N.W.2d 89, Snyder's failure to report income he received in connection with work activities impeded the Bureau's process of determining eligibility and was,

therefore, material. A failure to report work activities similarly impedes the Bureau's process of determining eligibility. Snyder's wrongful concealment of work activities and income he received in connection with work activities, which impeded the Bureau's process of determining his eligibility for disability benefits, is evidence from which a reasoning mind could reasonably find, as the Bureau did, that Snyder willfully made material false statements in connection with his claim.

## VI

[¶ 19] Snyder contends that finding false claims or statements by "the greater weight of the evidence," rather than by "clear and convincing" evidence, violates N.D. Const. art. I, § 21. Snyder did not raise this argument in the specification of errors he submitted to the district court and has not supported his assertion with citations to relevant authority or supportive reasoning. "Parties must do more than submit bare assertions to adequately raise a constitutional issue." *Renault v. North Dakota Workers Comp. Bureau,* 1999 ND 187, ¶ 14, 601 N.W.2d 580. We, therefore, decline to address Snyder's "perfunctory argument" that N.D. Const. art. I, § 21, "requires the Bureau to prove civil violations of N.D.C.C. § 65–05–33 by clear and convincing evidence." *Renault,* at ¶ 14.[3]

## VII

[¶ 20] Snyder contends his reporting failures were "a de minimus violation" and repayment of benefits paid and forfeiture of future benefits constitute an "excessive fine" under the North Dakota and United States constitutions and are " 'grossly disproportional' to the infraction." "Generally, issues not adequately briefed or argued on appeal will not be considered." *First State Bank v. Moen*

**3.** *See also Aalund v. North Dakota Workers Comp. Bureau,* 2001 ND 32, in which the appellant similarly failed to preserve an issue about the standard of proof necessary to prove a violation of N.D.C.C. § 65–05–33.

*Enterprises,* 529 N.W.2d 887, 893 (N.D. 1995). Without citations to relevant authority or supportive reasoning, an argument is assumed to be without merit. *Friedt v. Moseanko,* 484 N.W.2d 861, 863 (N.D.1992). Snyder did not provide any citations to relevant authority or supportive reasoning. His argument is not considered or decided.

### VIII

[¶ 21] The judgment is affirmed.

[¶ 22] VANDE WALLE, C.J., and MARING and NEUMANN, JJ., and McLEES, D.J., concur.

[¶ 23] The Honorable McLEES, D.J., sitting in place of SANDSTROM, J., disqualified.