2000 ND 51

Raymond SMITH, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,

and

Nabors Drilling, USA, Inc., Respondent.

No. 990299.

Supreme Court of North Dakota.

March 21, 2000.

Thomas F. Murtha, Murtha & Murtha, Dickinson, for claimant and appellant.

Lawrence A. Dopson, Special Assistant Attorney General, Bismarck, for appellee.

MARING, Justice.

[¶ 1] Raymond Smith appeals from the trial court's judgment affirming the North Dakota Workers Compensation Bureau's dismissal of his claim. We also affirm.

I.

[¶ 2] Smith worked as a motor hand on an oil rig owned and operated by Nabors Drilling USA, Inc. ("Nabors"). On January 8, 1998, while working on the rig, Smith suffered severe frostbite to his hands, which required amputation of portions of eight of his fingers. Smith filed an injury claim with the Bureau on January 10, 1998, when he first sought medical treatment for the frostbite. That same day, Smith underwent a drug test which showed a positive result for amphetamine, methamphetamine, and opiates.

[¶ 3] When questioned by a Bureau investigator, Smith explained, due to the pain caused by the frostbite, he had taken every medication in his medicine cabinet, including a Vicks inhaler and Tylenol with Codeine. Smith also revealed he had taken a capsule given to him by a friend on January 7, 1998. Initially, Smith said he did not know what the capsule was, but later admitted it was methamphetamine, saying "[i]t was in a capsule, but I'm sure, I understood it was methamphetamine, ok? It was in a capsule, easier way to pack it or something, I don't know." Smith's medical records indicated he was a suspected professional patient with drug seeking behavior.

[¶ 4] The Bureau dismissed Smith's claim. The Bureau found Smith's test showed levels of amphetamine and meth-

amphetamine above the concentration levels set by the U.S. Secretary of Transportation in 49 C.F.R. § 40, which created a rebuttable presumption the injury was due to impairment caused by the illegal use of a controlled substance under N.D.C.C. § 65–01–11. The Bureau concluded Smith failed to rebut the presumption and that, under N.D.C.C. § 65–01–02, an injury caused by the illegal use of controlled substances is not a compensable injury.

[¶ 5] Smith requested a hearing, denying drugs caused his injury and further denying he ever admitted using methamphetamine the day before his injury. A hearing was held on September 14, 1998. At the hearing, the Bureau abandoned its reliance upon the presumption created by the presence of illegal substances in Smith's body on January 10, 1998, because the test was too remote from the injury in time. Rather, the Bureau claimed the injury was noncompensable under N.D.C.C. § 65–01–02(11)(b)(3), because it was caused by the illegal use of controlled substances.

[¶ 6] At the hearing, Smith admitted he had taken a capsule on January 7, 1998, but believed it was an over the counter "caffeine-type pill . . . like the truck drivers use." Accounting for his test results, Smith stated that the day after his injury he took Disoxin, a methamphetamine, which a physician had prescribed for him a decade before; however, he denied having methamphetamine in his system on January 8, 1998. Smith testified he had eaten the cotton from a Vicks inhaler because it was an old family remedy for a cold and also said he had taken Tylenol with Codeine, which had been prescribed by a dentist six months before his injury. On cross-examination, Smith recanted his admission he had taken methamphetamine on January 7, 1998, stating "[w]ell, it's kind of hard to look inside a capsule to see what you're taking. It was not my opinion that's what it was entirely, no." Smith said his testimony changed because he thought back and became unsure about what he had taken.

[¶ 7] Terry Boyd, a drilling supervisor with Nabors, testified about rig operations. He stated he had never known anyone to be frostbitten as badly as Smith and no other worker on any of Nabors' North Dakota rigs was frostbitten during that winter.

[¶ 8] Dr. Rodney Bobbitt, who examined Smith's drug test, testified about the positive results. He stated a Vicks inhaler could produce positive amphetamine results, but the proportions of amphetamine and methamphetamine on the test were not consistent with Vicks. Smith's test showed much higher concentrations of methamphetamine than amphetamine; Vicks produces the opposite result. Eating the cotton from an inhaler creates a higher amphetamine result than would proper use of an inhaler; however, the proportions of each substance would be the same.

[¶ 9] Bobbitt stated Smith reported taking Dilaudid, which would account for the positive opiate result; however, Smith never sent him a prescription for Dilaudid. Smith did send a prescription for Tylenol with Codeine, but that drug would not produce the type of positive found in the test result. Bobbitt also stated Smith received Demerol during treatment on January 10, 1998, which could account for the opiate result.

[¶ 10] According to Bobbitt, Smith never reported he had taken Disoxin, which could have accounted for the positive methamphetamine result; Smith also never sent a copy of a Disoxin prescription. Bobbitt testified, at the outside, Disoxin remains in the body for 36 hours. Bobbitt explained methamphetamine affects the distal vascular system by constricting the blood vessels, thus reducing blood flow, so that a person under the influence of methamphetamine is more susceptible to cold. Bobbitt admitted the test result did not reliably indicate what might have been in Smith's system on January 8, 1998, be-

cause the test was too remote in time from the injury.

[¶ 11] Finally, the deposition testimony of Robin Mize, a physician's assistant, was also admitted into evidence at the hearing. Mize testified Smith admitted a problem with recreational methamphetamine use during a discussion she had with him about the positive test result. Mize said she believed Smith had an ongoing problem.

[¶ 12] On November 23, 1998, the Administrative Law Judge ("ALJ") released his recommended findings of fact, conclusions of law and order. In determining whether Smith had methamphetamine in his system when he sustained his frostbite injury on January 8, 1998, the ALJ considered Smith's admission he had taken methamphetamine the day before his injury, his statement he had taken methamphetamine the day after his injury, and his conversation about his drug problem with Mize, as "persuasive evidence of a high probability" Smith had methamphetamine in his system on January 8, 1998. The ALJ determined Smith's evasiveness and lack of honesty tipped the scale toward that finding. Though the ALJ acknowledged there was no hard evidence Smith ingested methamphetamine on the date of his injury, that was the only logical conclusion to be drawn from the evidence. The ALJ concluded methamphetamine was responsible for Smith's frostbite injuries because it made him more susceptible to cold weather. The weight of the evidence established self-induced reduction of blood flow to Smith's fingers was the cause of his frostbite, and thus Smith's injury was noncompensable. The Bureau adopted the ALJ's recommended findings of fact, conclusions of law and order, and the trial court affirmed the Bureau's decision.

## II.

[¶ 13] On appeal, this Court reviews the Bureau's decision, rather than the decision of the district court. *Loberg v. North Dakota Workers Compensation Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221.

We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Dean v. North Dakota Workers Compensation Bureau*, 1997 ND 165, ¶ 14, 567 N.W.2d 626. In evaluating the findings of fact, we do not make independent findings or substitute our judgment for that of the Bureau, *id.*, but ask only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Loberg*, at ¶ 5.

## III.

[¶ 14] Smith argues the Bureau failed to establish he took methamphetamine and also failed to show the illegal use of a controlled substance caused his injury. Thus, he contends the Bureau's decision was not supported by the evidence. We disagree.

[¶ 15] Smith admitted to a Bureau investigator that, on the day before his injury, he took a capsule he knew to contain methamphetamine; Dr. Bobbitt testified methamphetamine remains in the body for up to 36 hours. Smith also admitted ingesting Disoxin, a methamphetamine for which he could not produce a prescription, on the day after his injury. Smith told his treating physician's assistant he was a recreational methamphetamine user, and she testified she believed his drug problem was ongoing. Further, when later denying his use of methamphetamines, Smith provided evasive answers and changed stories several times. The ALJ considered it incredible that someone with an ongoing recreational methamphetamine habit would have ten-year-old Disoxin in his medicine cabinet. The ALJ also was unpersuaded by Smith's explanation that eating the cotton from the Vicks inhaler accounted for his positive drug test results. It is the Bureau's re-

sponsibility to assess the credibility of witnesses and resolve conflicts in the evidence. *Stewart v. North Dakota Workers Compensation Bureau,* 1999 ND 174, ¶ 7, 599 N.W.2d 280. We conclude a reasoning mind reasonably could have determined Smith had nonprescribed, and thus illegal, methamphetamine in his system on January 8, 1998, based on the testimony at the hearing and on an analysis of Smith's credibility.

[¶ 16] We also determine the Bureau's findings support its conclusion that the methamphetamine in Smith's system caused his frostbite injury. In *Hust v. North Dakota Workers Compensation Bureau,* it was unnecessary for us to decide whether the Bureau had the burden of proving a claimant's impairment was a proximate cause of, or a substantial contributing factor to, his injury because, under either standard, the Bureau's decision was supported by the record. 1998 ND 20, ¶ 13, 574 N.W.2d 808. The same is true in this case.

[¶ 17] Dr. Bobbitt testified methamphetamine causes constriction of the blood vessels and reduces blood flow, making someone who takes it more susceptible to cold. Bobbitt also testified fingers and toes are particularly vulnerable in this situation. Given that methamphetamine may remain in the body for up to 36 hours, the capsule Smith took the day before his injury could have been affecting his vascular system on January 8, 1998, reducing the blood flow to his fingers. Though temperatures were extreme that day, no other employee suffered from frostbite. Thus, a reasoning mind reasonably could have determined from the weight of the evidence that methamphetamine caused Smith's injury.

## IV.

[¶ 18] The Bureau's determination that the illegal use of methamphetamine caused Smith's frostbite injury is supported by the evidence in the record. Under N.D.C.C. § 65–01–02(11)(b)(3), an injury caused by the illegal use of a controlled substance is noncompensable. We, therefore, affirm the Bureau's dismissal of Smith's workers compensation claim.

[¶ 19] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.