2006 ND 19

**In the Interest of M.B. and N.B., Children.**

**Marlene Sorum, L.S.W., Petitioner and Appellee**

**v.**

**Director, Cass County Social Services, K.S. (f/k/a K.B.), I.B., M.B., N.B., and Monty Mertz, Guardian ad Litem, Respondents.**

**I.B., Respondent and Appellant.**

**No. 20050206.**

Supreme Court of North Dakota.

Jan. 31, 2006.

Constance L. Cleveland, Assistant State's Attorney, Fargo, N.D., for petitioner and appellee.

David A. Garaas, Garaas Law Firm, Fargo, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1]   I.B., the father of two children, appeals the juvenile court orders terminating his parental rights and denying his motion for continued visitation. Holding that I.B. was provided with sufficient notice of the proceedings against him and that the evidence supports the order terminating his parental rights, we affirm.

I

[¶ 2]   I.B. and K.S., formerly know as K.B., had two children.  They married in 2000, after the children were born, and divorced roughly four years later.  The children have been diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder.  They have witnessed episodes of domestic violence between their parents.  Their mother testified the children were abused by I.B.  K.S. and Cathy Hjelle, the children's therapist, testified the children were exposed to pornographic and horror movies and sexual activities.  In April 2002, the juvenile court found the children were deprived and placed them in social services' care.  They were reunified with their parents in the summer of 2002, after some family counseling.  Marlene Sorum, the petitioner and a social worker with Cass County Social Services, testified at the trial that any involvement in therapy ceased after reunification.  The parents separated again in 2003, and custody of the children was given to the mother.  In July and October 2003, the juvenile court found the children were deprived and placed them in social services' care.

[¶ 3]   In July 2004, Sorum petitioned to terminate the parents' rights.  After receiving notice by publication, the father appeared to defend against the petition, declaring that he wanted to provide for the children.  The mother submitted an affidavit consenting to her termination.  The children's guardian ad litem recommended a reunification plan for the father and the termination of the mother's rights.

[¶ 4]   A three-day trial was held in October 2004.  In December 2004, the judicial referee, by letter, announced her decision that the children were deprived, and she ordered Sorum to prepare proposed findings of fact, conclusions of law, and order for termination.  According to I.B., Sorum's findings of fact, conclusions of law, and order were adopted without change.  The father requested district

judge review of the termination and moved the referee for continued visitation. When his motion for visitation was denied, he requested district judge review of the visitation motion. The district judge adopted the referee's order terminating the father's parental rights and adopted the referee's order denying visitation. On appeal, I.B. argues he did not have proper notice of the facts used to terminate his rights; the referee improperly delegated drafting of the findings of fact, conclusions of law, and order for termination to Sorum; there is insufficient evidence to terminate his rights or to conclude any deprivation will continue, and he should be afforded an opportunity for reunification.

[¶ 5] The juvenile court had jurisdiction under N.D.C.C. §§ 27–05–06 and 27–20–03(1)(b). The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. §§ 27–20–56(1) and 28–27–01.

## II

█ [¶ 6] I.B. argues Sorum's petition did not give him proper notice of the facts used to terminate his rights. The petition to terminate parental rights must comply with the requirements of N.D.C.C. § 27–20–21. N.D.C.C. § 27–20–45(1). Section 27–20–21, N.D.C.C., provides, in part:

> The petition must be verified and may be on information and belief. It must set forth plainly:
>
> 1. The facts which bring the child within the jurisdiction of the court, with a statement that it is in the best interest of the child and the public that the proceeding be brought and, if delinquency or unruly conduct is alleged, that the child is in need of treatment or rehabilitation[.]

█ [¶ 7] "Given the nature of the parental rights at stake, procedural due process requires that, in addition to the legal standards involved, [the petitioner] apprise [the parent] of the factual circumstances behind the proposed termination." *Thompson v. King*, 393 N.W.2d 733, 738 (N.D.1986). Thus, to comply with due process and the statute, the petition must do more than merely state the statutory language justifying termination of parental rights provided in N.D.C.C. § 27–20–44 or the definition of a deprived child provided in N.D.C.C. § 27–20–02(8). *Interest of T.M.M.*, 267 N.W.2d 807, 813 (N.D.1978). The petitioner must provide specific facts the petitioner will rely on to terminate the parental rights so that the respondent parent has notice and is able to meaningfully prepare a defense against the petition. *Id.; see also Thompson*, at 738–39 (notice of facts needed to defend against the petition may come through discovery if the petition did not contain facts).

[¶ 8] The petition for termination and the supporting affidavit, incorporated into the petition by reference, contain many factual assertions concerning I.B.'s conduct as a parent. The documents allege that the father and mother have been involved in numerous domestic violence disputes. They allege that I.B. has a history of abusive behavior. The petition and affidavit also allege that although I.B. has provided financial support for the children, he told Sorum he is concerned that he will not be able to provide for the children and that his parental rights may be terminated. Finally, the documents allege the parents have not followed up on treatment for themselves or the children. I.B. appeared for trial and did not seem prejudiced by the petition or unable to defend against the charges. Counsel for I.B. conceded at oral argument trial counsel failed to object that evidence presented at trial did not conform with the petition. Although the facts in the petition were not necessarily

the same as the facts relied on by the referee in reaching the court's final decision, I.B. had notice of the facts Sorum would use to support terminating the father's parental rights. The contents of the petition complied with the statutory requirements, and I.B. had notice of the facts that would be used to terminate his parental rights. His due process rights have not been violated.

### III

[¶ 9] I.B. argues the referee's findings of fact are improper because procedures followed by the referee in developing the findings of fact were an improper delegation of judicial authority. According to him, Sorum developed the proposed findings of fact by copying a great deal from a post-trial letter her attorney sent to the referee outlining her view of the case, and then the referee adopted verbatim the proposed findings of Sorum.

[¶ 10] Rule 7.1, N.D.R.Ct., provides that preparation of proposed findings of fact and conclusions of law required by N.D.R.Civ.P. 52(a) may be assigned to one or more parties by the court. N.D.R.Ct. 7.1(b)(1). The rule provides the party opposing the proposed findings of fact an opportunity to object. N.D.R.Ct. 7.1(b)(1). Rule 52(a), N.D.R.Civ.P., provides, in part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.... The findings of a master or juvenile referee, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an

opinion or memorandum of decision filed by the court.

[¶ 11] We discourage a trial court's verbatim adoption of only one party's proposed findings of fact and encourage the trial court to prepare its own. *Smith Enters., Inc. v. In–Touch Phone Cards, Inc.*, 2004 ND 169, ¶ 11, 685 N.W.2d 741; *Schmidkunz v. Schmidkunz*, 529 N.W.2d 857, 859 (N.D.1995). When the trial court signs the proposed findings of fact, however, they become the court's findings and will not be overturned unless they are clearly erroneous. *Foster v. Foster*, 2004 ND 226, ¶ 10, 690 N.W.2d 197; N.D.R.Civ.P. 52(a). "Although we prefer that trial courts prepare their own findings of fact, we reject [the appellant's] argument that the court's wholesale adoption of [the appellee's] proposed findings of fact, by itself, is reason to reverse the court's decision." *Smith Enters., Inc.*, at ¶ 11. This is true even when the trial court sends only a letter to the parties, announcing its decision and asking the prevailing party to prepare the proposed findings of fact. *See Foster*, at ¶¶ 7, 10 (this Court affirmed the trial court's findings of fact that were prepared by counsel per the trial court's request by letter).

[¶ 12] In November 2004, the attorney for Sorum mailed the juvenile referee a post-trial letter discussing what she believed was proven at the trial and what the outcome of the case should be. In December 2004, the referee announced by letter her decision to terminate I.B.'s parental rights and directed the attorney for Sorum to prepare the findings of fact, conclusions of law, and order for the referee. The findings of fact adopted by the referee were substantially similar to the letter from Sorum's attorney to the referee. Counsel for Sorum conceded at oral argument the findings of fact she submitted were adopted verbatim by the referee.

The findings, conclusions, and order were signed by the referee, however, making Sorum's proposed findings the referee's findings. Therefore, the findings are still those of the court and will not be overturned unless clearly erroneous. N.D.R.Civ.P. 52(a).

### IV

[¶ 13] I.B. argues there is insufficient evidence to terminate his parental rights and insufficient evidence that the children's deprivation is likely to continue. To terminate parental rights, N.D.C.C. § 27–20–44(1)(b) requires the petitioner to prove three elements by clear and convincing evidence: (1) "The child is a deprived child," (2) "The conditions and causes of the deprivation are likely to continue or will not be remedied," and (3) "that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1)(b)(1); *Interest of M.M.S.*, 449 N.W.2d 574, 577 (N.D.1989). "Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true." *Adoption of S.R.F.*, 2004 ND 150, ¶ 7, 683 N.W.2d 913. A lower court's decision to terminate parental rights is a question of fact that will not be overturned unless the decision is clearly erroneous. N.D.R.Civ.P. 52(a); *see also S.R.F.*, at ¶ 7 (the de novo standard of review from past caselaw was superseded by N.D.R.Civ.P. 52(a), and we overruled those cases relying on it). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *S.R.F.*, at ¶ 8.

### A

[¶ 14] A "deprived child" is a child who:

Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian[.]

N.D.C.C. § 27–20–02(8)(a). "Proper parental care" means " 'minimum standards of care which the community will tolerate.' " *Interest of D.Q.*, 2002 ND 188, ¶ 12, 653 N.W.2d 713 (quoting *Interest of J.R.*, 2002 ND 78, ¶ 9, 643 N.W.2d 699).

[¶ 15] A review of the record and trial transcript shows sufficient evidence to support the court's finding that the children were deprived. The two children were adjudicated deprived on several occasions, once in April 2002, once in July 2003, and again in October 2003. Ginny Leon, a parent aide with Cass County Social Services, testified the children's home was very unkempt, as were the parents and children. The children's mother testified that she and I.B. were abusive toward each other in the children's presence and that I.B. was also abusive toward the children. She also testified I.B. would threaten to burn one of the children with a lighter if they did not recite the alphabet. The children's mother claimed that one of the boys was sexually assaulted by I.B.'s brother. She further testified the children were exposed to horror and pornographic films and were obsessed with sexual matters. Cathy Hjelle, the children's therapist, testified one of the boys told her that they had watched pornographic films and watched their father engage in sexual intercourse in front of them. K.S. testified I.B. moved out of a trailer home so K.S. and the children would have someplace to live after she was evicted from her apartment. When the mother and the children

first moved in, the trailer had no electricity. Hjelle also testified the children told her there was often a shortage of food and they were hungry. This conduct falls well below the minimum standards of care for a parent and meets the circumstances necessary to find a child is deprived. The referee's finding that the children were deprived is supported by the evidence and is not clearly erroneous.

### B

[¶ 16] Before parental rights may be terminated, the State must prove that the deprivation is "likely to continue or will not be remedied." N.D.C.C. § 27–20–44(1)(b)(1). To show this, the State cannot rely on past deprivation alone, but must provide prognostic evidence, demonstrating the deprivation will continue. *Interest of T.K.*, 2001 ND 127, ¶ 14, 630 N.W.2d 38. A parent's lack of cooperation is probative. *Id.* The juvenile court may also examine the parent's background. *Interest of A.S.*, 1998 ND 181, ¶ 19, 584 N.W.2d 853. "Prognostic evidence, including reports and opinions of the professionals involved, that forms the basis for a reasonable prediction as to future behavior must be evaluated in determining if a child's deprivation is likely to continue." *Interest of D.Q.*, 2002 ND 188, ¶ 21, 653 N.W.2d 713 (citing *Interest of D.F.G.*, 1999 ND 216, ¶ 20, 602 N.W.2d 697).

[¶ 17] A review of the transcript shows sufficient evidence for the court to conclude the children's deprivation will continue and will not be remedied. Leon testified I.B. saw himself only as the financial provider. She testified he expressed no desire to change the nature of their home. The children's mother testified that I.B. did not think the children needed therapy and that, despite the children's "special needs," he did not help maintain their therapy. She testified I.B. expressed no

interest in having the boys around when the parents were together or when they were separated. Georgia Holt, a therapist with Lutheran Social Services who worked with the family starting in 2003, testified I.B. had no involvement with their aid sessions before or after the parents separated. Sorum testified that between September 2003 and June 2004, I.B. stated he wished to terminate his parental rights. She testified that when the boys were being placed in foster care in 2002 and 2003, I.B. did not want to take custody and thought they should be placed with someone who could provide and care for them because he could not. Sorum testified that in August 2004, after the petition to terminate rights was filed, I.B. expressed an interest in being a parent to the children. She believed after meeting with him, however, that I.B. did not understand the children's needs or the effort required to provide for the children. Although I.B. was dating someone who appeared willing to be the children's mother, I.B. believed, according to Sorum's testimony, he would always be able to find another mother for the boys if his current girlfriend was no longer with him. Finally, Hjelle testified that the children were afraid of I.B. She testified that when the boys were first placed in foster care, they were often violent and angry. Since being in foster care, their behavior has improved, and a more normal caregiver-child relationship has evolved with their foster parents. She testified a continued positive environment is needed to ensure their progress. Hjelle testified that the boys "would act up after visitation" with their parents. Her conclusion about I.B., based on the information available to her, was that I.B. would not take responsibility for what has happened and that he may revert to acting as he did when the children's mother and he were together if the boys were returned to him. The conclusions of a social worker, a par-

ent aide, two therapists, and the children's mother provided clear and convincing evidence to the referee that the children would continue to be deprived if returned to their father. The referee's finding is supported by the evidence and is not clearly erroneous.

## C

[¶ 18] The final element of the three-part test is "the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1)(b)(1). The risk of harm may also be shown by prognostic evidence. *A.S.*, 1998 ND 181, ¶ 31, 584 N.W.2d 853.

[¶ 19] The children's mother testified that when the children were in the care of their parents, they were exposed to mental and physical abuse, possibly exposed to sexual abuse, and viewed violent and pornographic films. Hjelle testified the boys were diagnosed with ADHD and ODD, and she believed they suffered from post-traumatic stress disorder. She testified that when the parents first visited the children, they "would act up...." Given this evidence, the referee could conclude, by clear and convincing evidence, that the children continue to suffer from some harm and could suffer additional harm if returned to I.B. The referee's conclusion was not clearly erroneous. The record supports the juvenile court's conclusion that I.B.'s parental rights should be terminated.

## V

[¶ 20] I.B. argues the court erred by terminating his parental rights without a showing from Cass County Social Services that it used "reasonable efforts" to reunify him with his children as required by N.D.C.C. § 27–20–32.2. Section 27–20–32.2, N.D.C.C., provides, in part:

1. As used in this section, "reasonable efforts" means the exercise of due diligence, by the agency granted authority over the child under this chapter, to use appropriate and available services to meet the needs of the child and the child's family in order to prevent removal of the child from the child's family or, after removal, to use appropriate and available services to eliminate the need for removal and to reunite the child and the child's family. In determining reasonable efforts to be made with respect to a child under this section, and in making reasonable efforts, the child's health and safety must be the paramount concern.

2. Except as provided in subsection 4, reasonable efforts must be made to preserve and reunify families:

a. Prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and

b. To make it possible for a child to return safely to the child's home.

3. If the court or the child's custodian determined that continuation of reasonable efforts, as described in subsection 2, is inconsistent with the permanency plan for the child, reasonable efforts must be made to place the child in a timely manner in accordance with the permanency plan and to complete whatever steps are necessary to finalize the permanent placement of the child.

[¶ 21] There was testimony at trial that allowed the referee to conclude reasonable efforts had been made. Beginning in 2002 after the children's first placement in foster care, Cass County Social Services provided parenting aid to the parents. Leon testified I.B. took little interest in the parenting sessions. He was either not home

or was sleeping during the day because he worked at night. Although their household was in need of improvement, Leon testified I.B. expressed no interest in changing it. The children's mother testified I.B. did not believe the children needed therapy or medication and did not help in the children's treatment. Sorum testified that soon after the children were returned to the parents in 2002, any involvement in therapy ceased. She testified I.B.'s involvement in the family therapy was poor despite efforts to include him. Sorum also testified that although I.B. loves his children and now wants to be a father for them, he did not understand the efforts it would take to support the children and their needs. Holt testified that when she began her family counseling in 2003, the family unit was still intact, but I.B. had no involvement in the therapy. Shortly after these therapy sessions began, the parents separated. I.B. had not participated before or after the separation. Sorum also testified that after the children were placed in foster care in 2003, I.B. made it clear that he was not a resource for the children and his parental rights should be terminated. Finally, Hjelle testified I.B. visited the children, but when he did, they "would act up...." "[T]he child's health and safety must be the paramount concern." N.D.C.C. § 27–20–32.2(1). The evidence before the referee was sufficient to conclude Cass County Social Services made reasonable efforts to keep this family intact, but the father chose not to participate in them. Therefore, the juvenile court's finding is not clearly erroneous.

## VI

[¶ 22] Finally, I.B. argues his motion requesting visitation was improperly denied. His motion requested visitation with the children while the termination of his parental rights was reviewed by the district judge and this Court. In light of our holding that sufficient evidence was presented to terminate his parental rights, this issue is moot and need not be addressed. *Interest of L.B.B.*, 2005 ND 220, ¶ 9, 707 N.W.2d 469; *Wanner v. N.D. Workers Comp. Bureau*, 2002 ND 201, ¶ 31, 654 N.W.2d 760.

## VII

[¶ 23] The orders of the juvenile court are affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.